James A. Workman
P. O. Box 57144
New Orleans, Louisiana 70157-7144
Telephone: (504) 250-1603

Self-Representation

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2003 APR -1  PM 2: 17

LORETTA G. WHYTE
CLERK

## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF LOUISIANA

James A. Workman,

                Plaintiff,

vs.

**PASCAL F. CALOGERO, Jr.** in his personal
capacity; **JEFFREY P. VICTORY** in his personal
capacity; **JEANNETTE THERIOT KNOLL** in her
personal capacity; **CHET D. TRAYLOR** in his
personal capacity; **CATHERINE D. KIMBAL** in her
personal capacity; **BERNETTE J. JOHNSON** in her
personal capacity; **JOHN L. WEIMER** in his
personal capacity; **CHARLES B. PLATTSMIER** in
his personal capacity; **JOSEPH L. SHEA, Jr.** in his
personal capacity; **DONALD R. BROWN** in his
personal capacity; **E. J. CHAMPAGNE** in his personal
capacity; and **LEUANNE L. GRECO** in her personal
capacity. **THE TULANE UNIVERSITY OF
LOUISIANA**, a Louisiana Corporation, its
instrumentalities and/or agents – Does 1 – 2;
**EDWARD F. SHERMAN; LAWRENCE
PONOROFF; WENDY BROWN-SCOTT**; and **K.
DUPAQUIER.**

                Defendants

Case No.:

# 03-0922
**COMPLAINT**

## SECT. B MAG. 1

**JURY TRIAL DEMANDED**

Plaintiff, for his causes off action against Defendants, alleges that:

### PARTIES

### 1.

James A. Workman is an adult male citizen of the state of Louisiana.

Fee $150 00
Process
X  Dktd
CtRmDep
Doc.No.

**2.**

At all times material, Defendant Pascal F. Calogero, Jr., a citizen of the state of Louisiana, was Chief Justice, Louisiana Supreme Court.

**3.**

At all times material, Defendant Jeffrey P. Victory, a citizen of the state of Louisiana, was an Associate Justice, Louisiana Supreme Court.

**4.**

At all times material, Defendant Jeannette Theriot Knoll, a citizen of the state of Louisiana, was an Associate Justice, Louisiana Supreme Court.

**5.**

At all times material, Defendant Chet D. Traylor, a citizen of the state of Louisiana, was an Associate Justice, Louisiana Supreme Court.

**6.**

At all times material, Defendant Catherine D. Kimbal, a citizen of the state of Louisiana, was an Associate Justice, Louisiana Supreme Court.

**7.**

At all times material, Defendant Bernette J. Johnson, a citizen of the state of Louisiana, was an Associate Justice, Louisiana Supreme Court.

**8.**

At all times material, Defendant John L. Weimer, a citizen of the state of Louisiana, was an Associate Justice, Louisiana Supreme Court.

**9.**

At all times material, Defendant Charles B. Plattsmier, a citizen of the state of Louisiana,

2

was Chief Disciplinary Counsel, Office of Disciplinary Counsel, Louisiana Attorney Disciplinary Board.

**10.**

At all times material, Defendant Joseph L. Shea, Jr., a citizen of the state of Louisiana, was a member of the Administrative Committee, Louisiana Attorney Disciplinary Board.

**11.**

At all times material, Defendant Donald R. Brown, a citizen of the state of Louisiana, was a member of the Administrative Committee, Louisiana Attorney Disciplinary Board.

**12.**

At all times material, Defendant E. J. Champagne, a citizen of the state of Louisiana, was a member of the Administrative Committee, Louisiana Attorney Disciplinary Board.

**13.**

At all times material, Defendant LeuAnne L. Greco, a citizen of the state of Louisiana, was a member of the Administrative Committee, Louisiana Attorney Disciplinary Board.

**14.**

At all times material, Defendant Tulane University of Louisiana, hereinafter "Tulane University" was a citizen of the state of Louisiana in that it is a corporation incorporated under the laws of the state of Louisiana and having its principal place of business in the state of Louisiana. The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants Does 1 – 2 are unknown to Plaintiff who therefore sues said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiff will seek leave of court to amend this complaint to allege the true names and capacities. Plaintiff is informed and believes and

based thereon alleges that each of the Defendants, as an agent and/or instrumentality of Defendant Tulane University, designated as a Doe herein is liable in some manner for the acts, occurrences and omissions hereinafter alleged.  Any reference or allegation against Defendant Tulane University includes Does 1 through 2.

**15.**

Defendant Tulane University directs, supervises, supports, promotes and engages in providing research, education and counseling services to an undergraduate, graduate, and professional school student body.  The Tulane University engages in these activities through its agents and instrumentalities who engage in research, education and counseling services under the authority of a hierarchical organization.  The Tulane University is supported through the payment of tuition and fees, governmental grants, private bequests, et al.  Defendant Tulane University creates, appoints, assigns and re-assigns heads of the instrumentalities who have the power to directly assign and remove individual agents.  Defendant Tulane University promulgates and enforces the laws and administrative regulations regarding the education, training and standards of conduct and discipline for its agents and instrumentalities which serve in the administrative, educational and research workings of the Tulane University world-wide.

**16.**

At all times material, Defendant Edward F. Sherman was a citizen of the state of Louisiana, Dean and/or Professor of Law of the Tulane University School of Law; a Member and officer of the Louisiana State Bar Association (Member Board of Governors 1997-1999; Member of the committee of lawyer and judicial conduct 1999 -; and, a Member of the Louisiana Bar Foundation [judicial liaison committee 1999 -]).

4

**17.**

At all times material, Defendant Lawrence Ponoroff, a citizen of the state of Louisiana

was either Dean or Vice Dean and Professor of Law of the Tulane University School of

Law, and a member of the Louisiana State Bar Association (Member Board of Governors

2002 -).

**18.**

At all times material, Defendant Wendy Brown-Scott, a citizen of the state of Louisiana,

was a Professor of Law of the Tulane University School of Law.

**19.**

At all times material, Defendant K. Dupaquier, a citizen of the state of Louisiana, was

Director of Public Safety, Tulane University.

**JURISDICTION**

**20.**

This action arises under the IV Amendment, the V Amendment, and the XIV

Amendment, Section 1, of the Constitution of the United States; 42 U.S.C. § 1983;

18 U.S.C. §§ 1962 (c)(d) and 1964(c).

**21.**

42 U. S. C. 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or
> usage, of any State or Territory or the District of Columbia, subjects, or causes to
> be subjected, any citizen of the United States or other person within the
> jurisdiction thereof to the deprivation of any rights, privileges, or immunities
> secured by the Constitution and laws, shall be liable to the party injured in an
> action at law, suit in Equity, or other proper proceeding for redress.

The jurisdictional counterpart is 28 U. S. C. § 1343(3) (1994), which empowers the

federal district courts to hear civil actions claiming deprivation "of any right or immunity

secured by the Constitution of the United States or by any Act of Congress providing for

equal rights of citizens or of all persons within the jurisdiction of the United States."

### 22.

18 U. S. C. §§1962 (c)(d) and 1964(c), which states in relevant part:

> Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefore in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee.

### 23.

This court has personal jurisdiction over the Defendants because a tort was committed by

the Defendants against Plaintiff in this district.

### IMMUNITY

### 24.

The well-established doctrine of absolute immunity of judges for their judicial acts,

rooted in the common law, continues to serve as a sturdy shield for judges sued under

§1983 for damages arising from their judicial actions.  Absolute judicial immunity does

not apply, however, to judges performing nonjudicial functions.  **See** Forrester v. White,

484 U. S. 219 (1988), and Supreme Court v. Consumers Union, 446 U. S. 719 (1980).

*In Supreme Court v. Consumers Union the Court held that no judicial immunity existed*

*for state supreme court and its chief justice when acting in their enforcement capacity*

*with respect to the state code of professional responsibility.*

### 25.

*Nor is the absolute immunity of judges derivative in that it will not protect private*

*persons who conspire with a judge to violate constitutional rights.*  In Dennis v. Sparks,

449 U. S. 24 (1980), the unanimous Court held that private parties accused of bribing a

judge to issue an injunction were acting "under color of state law", even though the judge

had been dismissed from the suit on immunity grounds.

**26.**

Nor does the Eleventh Amendment to the United States Constitution bar damages actions

against state officials who are sued solely in their individual capacity. **See,** e.g., Hafer v.

Melo, 502 U. S. 21 (1991); Will v. Michigan Department of State Police, 491 U. S. 58

(1980); Schener v. Rhodes, 416 U. S. 232, 237-38 (1974). The purpose of §1983

damages is to compensate persons for injuries that are caused by the deprivation of

constitutional rights. Such injuries, however, can include mental and emotional distress,

as well as out-of-pocket losses and other monetary harm. The standard for measuring

punitive damages was articulated in Smith v. Wade, 461 U. S. 30 (1983). The Smith

Court ruled that punitive damages under §1983 should be awarded on the same basis as

in any ordinary tort cause of action. Thus, the Court held that punitive damages in a

§1983 suit may be awarded when the defendant acted with "reckless or callous disregard

for the plaintiff's rights" or "when the defendant's conduct is shown to be motivated by

evil motive or intent". Id. at 51, 56.

**27.**

A court may be an enterprise within meaning of RICO (18 USCS §§1961 et seq.) where

participants engaged in patterns of activity designed to corrupt operation of court's own

process. **See** Averbach v. Rival Mfg. Co. (1987 CA3 Pa) 809 F2d 1016, 6 FR Serv 3d

1144, cert den (1987) 482 US 915, 96 L Ed 2d 675, 107 S Ct 3187 and cert den (1987)

484 US 822, 98 L Ed 2d 45, 108 S Ct 83. The Supreme Court of New York in Queens

was an enterprise as defined by RICO statute, since statute requires only that enterprise

be organization, not that it be criminal in nature. **See** United States v. Brennan (1986, ED

NY) 629 F Supp 283, affd (1986, CA2 NY) 798 F2d 581, 21 Fed Rules Evid Serv 358.

### 28.

There exists no constitutional, statutory, or common law impediment to the suit against

the defendant parties.

### FACTS

### 29.

The Plaintiff is a sixty (60) year old male; a disabled military veteran; a retired

government criminal investigator; a convicted felon; and an August 2001 graduate of the

Tulane University School of Law. The Plaintiff did not disclose the record of felony

convictions at the time of application for admittance to the Tulane School of Law. The

failure to disclose a record of felony convictions was, at the time of admission to the

Tulane University School of Law, if discovered, subject to a review of the Tulane

University School of Law Honor Board and the imposition of penalties that could

have included dismissal from the school.

### 30.

It is alleged that during the period of October – November 2000, Defendant Doe 1, a

commissioned member of the Tulane University Department of Public Safety conducted

or caused to be conducted a criminal history background check of the Plaintiff. The

authority of university of college police officers in Louisiana to conduct criminal history

background checks is statutorily limited to those that pertain to an employee applicant or

prospective employee of a university or college. The Plaintiff was not at any time such

an applicant, nor had the Plaintiff ever been stopped, detained, or arrested at any time by

the Tulane University Department of Public Safety.  The conduct of such a criminal

history background check required the unauthorized use of the Plaintiff's Social Security

Identification Number, as well as inter-state wire communications.

### 31.

It is alleged that the information obtained through the illegal criminal history background

check was provided by Defendant Doe 1 to Defendant Wendy Brown-Scott, who

subsequently brought the information to the attention of the Tulane School of Law Honor

Board.  It is further alleged that such action by Defendant Wendy Brown-Scott was

known to Defendant Edward F. Sherman, then Dean, and Defendant Lawrence Ponoroff,

then Vice Dean, of the Tulane University School of Law.  Defendant Sherman, as an

officer and a member of the Louisiana State Bar Association, and Defendant Ponoroff, as

a member of the Louisiana State Bar Association were presumptively aware of the

criminal statutes of the state of Louisiana, and are alleged to have voluntarily acquiesced

to their violation by Defendant Doe 1 and Defendant Brown-Scott.

### 32.

It is alleged that the Tulane University School of Law Honor Board declined to initiate

any disciplinary proceedings against the Plaintiff based upon the failure to disclose the

record of felony convictions.  It is further alleged, however, that Defendant(s) Brown-

Scott, Sherman, and Ponoroff found the Honor Board's refusal to act unacceptable.  As a

consequence, Defendant Brown-Scott, with the acquiescence and approval of

Defendant(s) Sherman and Ponoroff, presented information to the Honor Board which the

Defendants Brown-Scott, Sherman and Ponoroff knew to be false, unsubstantiated,

defamatory, and unproven.  It is alleged that although the Honor Board declined to
conclusively reverse its earlier decision, it did authorize Defendants Brown-Scott,
Sherman and Ponoroff to continue an investigation into the matter.

### 33.

It is alleged that the authorization for further investigation was frustrated by the
approaching date of the Plaintiff's graduation.  Consequently, Defendant Brown-Scott,
with the tacit approval of Defendants Sherman and Ponoroff, entered into an attempt to
prevent the Plaintiff's graduation through the creation of an educational environment
inimical to the successful completion of the education requirements for graduation.  It is
alleged that among other indices of the malicious and malevolent intent of Defendants
Brown-Scott, Sherman and Ponoroff was the dissemination among the faculty of the
false, unsubstantiated, defamatory, and unproven allegations presented to the Honor
Board; the solicitation of fraudulent grading practices; having the Plaintiff barred from
the Tulane University facilities under penalty of Trespass at a time when the Plaintiff was
attempting to complete the required independent research necessary for graduation; and,
requiring Plaintiff to undergo a psychiatric examination and to attend weekly psychiatric
counseling (at Plaintiff's expense) in order to qualify for readmission to the campus.  The
most egregious example of the malicious and malevolent intent of the Defendants Brown-
Scott, Sherman and Ponoroff, however, occurred with the false imprisonment of the
Plaintiff on May 19, 2001.

### 34.

It is alleged that at approximately 11:45 a.m., May 19, 2001, the Plaintiff arrived at the
Morial Convention Center, New Orleans, Louisiana, for the purpose of attending the

Commencement Program of the Tulane University School of Law. The Plaintiff's attendance was in the role of a guest, and not as a participant. At no time, however, did the Plaintiff leave the public concourse, nor was there any contact initiated between the Plaintiff or any Tulane University official or student. At approximately 12:05 p.m., May 19, 2002, the Plaintiff was approached by Defendant K. Dupaquier in the company of four (4) additional commissioned officers of the Tulane University Department of Public Safety. Defendant Dupaquier and each of the commissioned officers were attired in full police uniform, to include 9mm semi-automatic side arms.

### 35.

It is further alleged that Defendant Dupaquier acting under the color of law, informed the Plaintiff that he was trespassing and instructed the Plaintiff to accompany the officers to another more secluded location approximately fifty (50) yards from the point of initial contact. At that time Defendant Dupaquier and the officers formed an encircling formation around the Plaintiff and moved the Plaintiff through the arriving crowds of the graduating students and their families and guests. Upon arriving at the desired location, Defendant Depaquier placed the Plaintiff under armed guard while he sought further instructions. Approximately thirty (30) minutes later, Defendant Dupaquier returned and stated that the "Dean" had stated that the Plaintiff would be allowed to attend the Commencement; however, a uniformed Tulane University police officer would stand next to the Plaintiff with instructions to physically subdue and remove the Plaintiff from the auditorium if there was any disturbance. Defendant Dupaquier identified the "Dean" as Defendant Sherman.

11

**36.**

At no time during the preceding incident was the Plaintiff anywhere other than a public area within the Morial Convention Center. At no time were security officers of the Morial Convention Center, or commissioned officers of the New Orleans Police Department present or involved in the incident. Defendant Dupaquier, acting as the Director of Public Safety of Tulane University, and outside of his jurisdiction but acting under color of law, placed the Plaintiff under armed detention, in a manner intended to inflict maximum public degradation and emotional stress and harm. It is alleged that this action was taken not with regard to a violation of law, but rather was the execution of an irrational, arbitrary, and malicious policy decision of a private corporation to publicly demean, embarrass, and degrade the Plaintiff among his student contemporaries and their families.

**37.**

It is alleged that at all times material the defendants conspired to pursue a scheme to defraud the Plaintiff, the fraudulent intent of which may be inferred from the modus operandi of the scheme, i.e., the antithesis of the reflection of moral uprightness, or fundamental honesty, fair play and right dealing in general and business life of members of society. It is the scheme to defraud and not actual fraud that is required; fraudulent intent may be inferred from the modus operandi of the scheme.

**38.**

It is alleged that the scheme to defraud the Plaintiff is ongoing and continuing, in that Tulane University continues to seek payment and/or extort funds for tuition and fees for which it did not render the required contracted services, and for which it has withheld

12

delivery of the Juris Doctor Diploma and Certificate of Law.

**39.**

It is alleged that Defendants Charles B. Plattsmier, Joseph L.Shea, Jr., Donald R. Brown, E. J. Champagne, LeuAnne L. Greco, Pascal F. Calogero, Jr., Jeffrey P. Victory, Jeannette Theriot Knoll, Chet D. Traylor, Catherine D. Kimbal, Bernette J. Johnson, and John L. Weimer, did conspire to corrupt the Rules of the Supreme Court of Louisiana in order to prevent the investigation of multiple offenses by Defendants Sherman and Ponoroff; and that in so doing they consciously and intentionally denied the Plaintiff both the equal protection and due process rights secured by both the United States Constitution and the Louisiana Constitution of 1974.

**40.**

The Louisiana Supreme Court has the exclusive right to regulate lawyers who practice in the state of Louisiana under the authority of Article V, Section 5 (A) and (B) of the Louisiana Constitution of 1974.  The power to establish procedural rules for the Louisiana State Bar Association, however, is circumscribed by the constitutional injunction that such rules *may not be in conflict with the law*.  *See La.Const.art.5,§5(A)*. Nor is the Louisiana Supreme Court empowered to decide the constitutionality of laws as they apply to the Louisiana State Bar Association unless the matter has arisen at the trial court level, i.e., in their administrative supervisory role the Supreme Court is constitutionally constrained to *comply* with existing law. Id.

**41.**

Defendants Calogero; Victory; Knoll; Traylor; Kimbal; Johnson; and Weimer constitute the membership of the Louisiana Supreme Court.

13

**42.**

A complaint is any information that comes to the attention of the Office of Disciplinary Counsel concerning a lawyer subject to the jurisdiction of the agency. Every complaint is screened by a special screening/intake counsel in the Office of Disciplinary Counsel to determine whether the information relates to lawyer misconduct or incapacity.

**43.**

*If the complaint alleges facts which, if true, would constitute misconduct or incapacity, the complaint is to be investigated.*

**44.**

On January 2, 2002, a complaint alleging professional misconduct by Defendants Sherman and Ponoroff was delivered by certified mail to the Office of the Disciplinary Counsel, Louisiana Attorney Disciplinary Board, 4000 S. Sherwood Forrest Boulevard, Suite 607, Baton Rouge, Louisiana, 70816.

**45.**

A reply to the complaint, dated January 7, 2002, was received from Defendant Plattsmier. In his reply, Defendant Plattsmier stated as his legal analysis: (1) The complainant had admitted to having falsified an application to law school by having omitted his prior felony convictions; (2) The Supreme Court of Louisiana had approved of use of a record of felony convictions in determining both law school admission, as well as admission to the Louisiana State Bar Association; and (3) as a consequence of the Supreme Court's rulings, the subjects of the complaint had not committed any act that, if proven true, would constitute professional misconduct.

**46.**

On February 4, 2002, a Petition for Review was delivered by certified mail to the Louisiana Attorney Disciplinary Board, 2800 Veterans Memorial Blvd., Suite 310, Metairie, Louisiana 70002. In a reply dated April 23, 2002, the Administrative Committee of the Louisiana Attorney Disciplinary Board noted Defendant Plattsmier's explanation that law schools throughout the state, by *mandate* of the Louisiana Supreme Court, are required to screen applicants on the basis of good character and moral fitness, and that Defendants Sherman and Ponoroff are bound to follow the mandates of the Louisiana Supreme Court. The reply further noted that nothing in the complaint suggested violation of the Rules of Professional Conduct by Defendants Sherman or Ponoroff. Therefore, no basis for an investigation by Defendant Plattsmier's office existed. The reply of the Louisiana Attorney Disciplinary Board gratuitously noted that the Plaintiff had made a number of conclusory and vague allegations concerning the conduct of Defendants Sherman and Ponoroff.

**47.**

All accusatory proceedings are of necessity "conclusory", e.g., a victim's assertion that a crime has been committed is "conclusory"; the indictment by Grand Jury is "conclusory"; the judgment of guilt or innocence is "conclusory". As to the charge of "vagueness", the Ethical Conduct Complaint listed the names and places of employment of the accused individuals; the names and places of employment of twenty-nine (29) witnesses; the title of the alleged offenses, with a complete description of the manner of their commission; the complete identity, to include telephone number and address of the complainant; and, finally a statement that the offenses charged were not only criminal but were equally

offensive to the canons of the Louisiana Bar Association. The failure to specify the "canons" which were violated did not anticipate the Chief Disciplinary Counsel's and the Administrative Committee's specious and disingenuous assertion that members of the Louisiana State Bar Association have a "mandate" that suspends the Rules of Professional Conduct and sanctions the commission of felonies. The initial complaint also anticipated that the Defendant Plattsmier would, as required by Rule XIX, perform at least a cursory investigation. Certainly that appears to be the intent of the powers enumerated in Rule XIX, § 14.

### 48.

On March 18, 2002 a Petition for Mandamus was filed with the Louisiana Supreme Court. In the Petition it was noted that Defendant Plattsmier's contrived and disingenuous analysis had failed to address the pertinent issues. The issue was not whether the record of convictions may be used in determining eligibility for memberships in the Louisiana Bar Association. The issue is not whether the complainant failed to disclose felony convictions on the application to the Tulane School of Law. Indeed, the Petitioner/Plaintiff was admitted to the Tulane School of Law; was subjected to the adjudicative process prescribed by the Tulane School of Law for the offense of having falsified the law school application. Angered that the adjudication process had not achieved the desired effect, Defendants Sherman and Ponoroff joined, facilitated and furthered a conspiracy that attempted to deprive the Plaintiff of the opportunity to successfully complete the course of study. Specifically, Defendants Sherman and Ponoroff were accused of having committed the following criminal offenses: *Failure to Report a Felony (La.R.S. 14:25, Accessories after the Fact); Illegally authorizing the*

16

*Dissemination of Criminal History Background Information (La.R.S. 15:596(B));*
*Conspiracy to Commit the Crime of Defamation (La.R.S. 14:26); the Crime of*
*Defamation (La.R.S. 14:47); Conspiracy to Commit the Crime of Fraud/Theft (La.R.S.*
*14:67); Conspiracy to Commit the Crime of False Imprisonment (La.R.S. 14:26); and*
*the Crime of False Imprisonment (La.R.S. 14:47).*

**49.**

The Petition for Mandamus further noted that contrary to the arbitrary, capricious and

disingenuous assertions of Defendant Plattsmier, each of the allegations would, if proven

true, constitute a violation of the Louisiana State Bar Association Rules of Professional

Conduct, i.e., *Rule 8.3 Reporting Professional Misconduct.* A lawyer possessing

unprivileged knowledge of a violation of this code shall report such knowledge to a

tribunal or other authority empowered to investigate or act upon such violation.; *Rule 8.4*

*Misconduct.* It is professional misconduct for a lawyer to violate or attempt to violate the

Rules of Professional Conduct, knowingly assist or induce another to do so, or do so

through the acts of another; commit a criminal act especially one that reflects adversely

on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; engage

in conduct involving dishonesty, fraud, deceit or misrepresentation; and/or engage in

conduct that is prejudicial to the administration of justice.

**50.**

The allegations contained in the complaint and Petition for Mandamus were supported by

the identification of documentary sources as well as a list of twenty-nine (29) witnesses,

into which Defendant Plattsmier had made no enquiry.

**51.**

*If an accused lawyer is subject to the jurisdiction of the court and the information alleges facts, which, if true, would constitute misconduct or incapacity, counsel shall conduct an investigation, unless in the discretion of disciplinary counsel the matter qualifies for referral to the Practice Assistant and Improvement Program, Rule XIX, §19A.*

**52.**

It is the combined rationale of the Chief Disciplinary Counsel of the Louisiana Attorney Disciplinary Board and of the Louisiana Attorney Disciplinary Board Administrative Committee that the alleged offenses attributed to Defendants Sherman and Ponoroff do not violate any of the Louisiana State Bar Association Rules of Professional Conduct. This rationale is based upon their combined attribution of an unidentified mandate of the Louisiana Supreme Court that commands law schools to consider felony convictions in the law school admissions process. In what would first appear as a superficial albeit majesterial leap of logic, the Chief Disciplinary Counsel and Administrative Committee proffered the rationale that the alleged crimes of Defendants Sherman and Ponoroff would not arise, if proven true, to the level of professional misconduct because they were complying with the mandate/command of the Louisiana Supreme Court. Thus reasoned, the Louisiana Supreme Court's mandate to screen law school applicants on the basis of good character and moral fitness is transformed into a criminal license for the commission of crimes which are then defined as not violating the Louisiana State Bar Association Rules of Professional Conduct, rules which are promulgated and published under the authority of the Louisiana Supreme Court. The rationale is such that it fails to define the precise limitations (if any) that the Louisiana Supreme Court would place

upon this "criminal license", e.g., if the mandate legitimizes attempts at fraud, does it extend that legitimacy to armed robbery; if the Court's command sanctions false imprisonment, would it also sanction kidnapping; and, if defamation is condoned, would perjury be any less acceptable?

**53.**

This specious and disingenuous sophistry might easily be dismissed as ludicrous were it not for one singular act of affirmation. A Petition for Appeal of the Disciplinary Board Order was submitted to the Louisiana Supreme Court on May 15, 2002. On June 14, 2002 the Court, without comment or dissent, unanimously denied the Petition.

**54.**

The failure of the Louisiana Supreme Court to comment upon the denials of the Petition for Mandamus and the Petition for Appeal does not render those decisions silent or devoid of meaning. Rather the Court, having been apprised of the constitutional issues involved, rendered their decisions with a malodorous stench normally associated with the offal of a third world abattoir. *The Louisiana Supreme Court baldly asserts through its silence that it has issued a mandate/command which condones, countenances, or otherwise permits the commission of criminal offenses and/or the suspension of the criminal statutes of the state of Louisiana with regard to an identifiable minority*

**55.**

*The Louisiana Supreme Court's deafening silence thunders with its contempt for the Due Process and Equal Protection provisions of the United States Constitution as well as the Louisiana Constitution of 1974, as well as presenting a caricature of Louisiana justice similar to that of a late popular entertainer's recitation of, "Here comes the judge".*

### 56.

If such a characterization is to be denied, it may only be done by acknowledging the deliberate and knowing attempt to prevent the investigation of prominent members of the Louisiana State Bar Association by organs under the control and administration of the Louisiana Supreme Court. *The Court, in its non-judicial enforcement role, is not entitled to any deference with regard to compliance with, or enforcement of, its own procedures/rules.*

### 57.

As a direct result of the actions described herein, Plaintiff has suffered and will continue to suffer severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, and other psychological injuries; was prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of life; has incurred and will continue to incur loss of income and loss of earning capacity.

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS

## COUNT 1 – VIOLATION OF 18 U.S.C. §1962 (c)

Plaintiff incorporates each and every allegation as contained in paragraphs 1 through 57 of this complaint as if set forth in full herein.

### 58.

The persons described above, acting under a penumbra of color of state law afforded by the Louisiana Supreme Court, and aided and abetted by each other, their agents, employees and others, have conducted and participated directly or indirectly in the

conduct and affairs of the enterprise and/or associated themselves with the enterprise through a pattern of racketeering activity in violation of 18 U.S.C. §1962 (c) as described.

**59.**

Defendant Plattsmier, acting under color of state law, conspired to and did take specific acts to conceal Defendant Sherman's and Defendant Ponoroff's, or aided and abetted Defendant Sherman and Defendant Ponoroff in concealing their, criminal activity. As further evidence of the agreement, Defendant Plattsmier conspired with Defendant Sherman and Defendant Ponoroff in evading criminal investigation/prosecution and the public embarrassment and liability related thereto.

**60.**

Beginning on April 23, 2002 Defendant(s) Shea, Jr.; Brown; Champagne; and Greco, acting under color of state law, joined in the conspiracy and enterprise to aid and abet Defendants Plattsmier, Sherman, and Ponoroff in concealing their criminal activity and evading criminal investigation/prosecution and the public embarrassment and liability related thereto.

**61.**

Beginning on May 3, 2002 Defendant(s) Calogero, Jr.; Victory; Knoll; Traylor; Kimbal; Johnson; and Weimer, acting under color of state law, joined in the conspiracy and enterprise to aid and abet the Defendants in concealing their criminal activity and evading criminal investigation/prosecution and the public embarrassment and liability related thereto.

**COUNT II:  VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) AGAINST DEFENDANT TULANE UNIVERSITY FOR THE ACTS OF DEFENDANT**

**DOE 1.**

Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 61 of this complaint as if set forth in full herein.

**62.**

Using the power, authority and trust of his/her respective position, Defendant Doe 1, under color of state law, did conduct or cause to be conducted an illegal criminal history background check of the Plaintiff, and that the information obtained was then disseminated to unauthorized individuals in violation of the prevailing criminal statutes of the state of Louisiana.

**COUNT III: VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) AGAINST DEFENDANT TULANE UNIVERSITY FOR THE ACTS OF DEFENDANT BROWN-SCOTT.**

Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 62 of this complaint as if set forth in full herein.

**63.**

Using the power, authority and trust of her respective position, Defendant Brown-Scott attempted through the illegal dissemination of information which she knew or should have known to be either illegally obtained in violation of the prevailing criminal statutes of the state of Louisiana and/or false and unproven accusations to entice, induce, direct and/or coerce members of the Honor Board, Tulane School of Law, as well as members of the Tulane Law School faculty to dismiss and/or fail the Plaintiff from the course of study of Tulane School of Law.

**COUNT IV: VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) AGAINST**

DEFENDANT TULANE UNIVERSITY FOR THE ACTS OF DEFENDANT
SHERMAN.

Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 63 of
this complaint as if set forth in full herein.

### 64.

Using the power, authority and trust of his position as Dean, Tulane School of Law,
Defendant Sherman, acting under color of state law provided by "mandate" of the
Louisiana Supreme Court, did allow, facilitate, and/or tolerate the presentation of
information/accusations which he should have known to be either illegally obtained
and/or fraudulent, and which were intended to create an environment inimical to the
Plaintiff's graduation from the Tulane School of Law.

### 65.

Using the power, authority and trust of his position as Dean, Tulane School of Law,
Defendant Sherman, acting under color of state law provided by "mandate" of the
Louisiana Supreme Court, did allow, facilitate, and/or authorize the illegal
arrest/imprisonment of the Plaintiff in a manner intended to inflict maximum public
humiliation and emotional distress upon the Plaintiff.

**COUNT V:  VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) AGAINST
DEFENDANT TULANE UNIVERSITY FOR THE ACTS OF DEFENDANT
PONOROFF.**

Plaintiff incorporates each and every allegation contained in paragraphs 1 through 65 of
this complaint as if set forth in full herein.

**66.**

Using the power, authority and trust of his position as Vice Dean, Tulane School of Law,

Defendant Ponoroff, acting under of color of state law provided by "mandate" of the

Louisiana Supreme Court, did allow, facilitate, and/or tolerate the presentation of

information/accusations which he knew or should have known to be either illegally

obtained and or fraudulent, and which were intended to create an environment inimical to

the Plaintiff's graduation from the Tulane School of Law.

**COUNT VI:  VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) AGAINST**

**DEFENDANT TULANE UNIVERSITY FOR THE ACTS OF DEFENDANT**

**DOE 2.**

Plaintiff incorporates each and every allegation contained in Paragraphs 1 though 66 of

the complaint as if set forth in full herein.

**67.**

Defendant Doe 2 using the power, authority and trust of his/her position, did intercept or

cause to be intercepted United States mail from the Office of the Attorney General, State

of Louisiana, to the Plaintiff, and did significantly delay and/or misroute the

correspondence in an effort to obstruct justice.

**COUNT VII:  VICARIOUS LIABILITY (RESPONDEAT SUPERIOR) AGAINST**

**DEFENDANT TULANE UNIVERSITY FOR THE ACTS OF DEFENDANT**

**DUPAQUIER.**

Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 67 of

this complaint as if set forth in full herein.

**68.**

Acting under color of state law and using the power, authority and trust of his position as Director of Public Safety, Tulane University, Defendant Dupaquier did illegally arrest/imprison the Plaintiff in a manner intended to inflict the maximum humiliation and emotional distress upon the Plaintiff.

**DEPRIVATION OF CIVIL RIGHTS**

**COUNT VIII:  VIOLATION OF 42 U. S. C. § 1983**

Plaintiff incorporates each and every allegation contained in Paragraphs 1 through 68 of this complaint as if set forth in full herein.

**69.**

The Defendants described above, acting under the color of a penumbra of state law, regulation, custom, or usage, and aided and abetted by each other, their agents, employees and others have, with reckless and callous disregard, knowingly deprived the Plaintiff of rights secured under the IV, V, and XIV Amendments of the United States Constitution.

**70.**

As a direct result of the actions described herein, Plaintiff has suffered and will continue to suffer severe and permanent emotional distress, physical manifestations of emotional distress, embarrassment, loss of self-esteem, and other psychological and physical injuries; was prevented and will continue to be prevented from performing his normal daily activities and obtaining the full enjoyment of life; has incurred and will continue to incur loss of income and loss of earning capacity.

**71.**

As a direct result of the actions described herein, Plaintiff has suffered a monetary loss in an amount to be determined by a jury in excess of $75,000.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury in this matter.

## PRAYER

Plaintiff prays for judgment against Defendants, and each of them, for non-economic and economic losses described herein and for Plaintiff's costs and disbursements.

DATED this 1st day of April, 2003.

JAMES A. WORKMAN

By: _____
James A. Workman
P. O. Box 57144
New Orleans, Louisiana 70154-7144

Telephone:  (504) 250-1603